IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Vent-Matic Company, LLC,

    Plaintiff,

v.                                                               Case No.

Draught Technologies, LLC,

    Defendant.

# COMPLAINT

Plaintiff Vent-Matic Company, LLC ("Vent-Matic") by its attorneys Ryan Kromholz and Manion, S.C., by Daniel R. Johnson and Melissa S. Hockersmith, for its complaint against Defendant Draught Technologies, LLC ("Draught Technologies") alleges as follows:

## The Parties

1.    Vent-Matic is a Nevada limited liability company having a place of business at 6436 Burgundy Way, Las Vegas, Nevada, 89107. Vent-Matic is in the business of designing, marketing, distributing and selling equipment for draught beverage dispensing, including faucets.

2.    Upon information and belief, Defendant Draught Technologies is a limited liability company organized under the laws of the state of Delaware. Upon information and belief, Defendant has a principal place of business at 420 Woodland Avenue, Bloomfield, Connecticut, 06002. Defendant is in the business of providing draught dispensing products and services, including faucets.

3. Upon information and belief, Defendant sells and/or offers for sale a variety of products, including faucets, through the website www.draughtech.com ("DT Website").

## Jurisdiction and Venue

4. This action arises under the patent laws of the United States, Title 35 U.S. Code and is a complaint for patent infringement, at least under 35 U.S.C. § 271. This action also arises under the trademark laws of the United States, 15 U.S.C. § 1051 et seq. and is a complaint for trademark infringement (at least under 15 U.S.C. § 1114) and unfair competition (at least under 35 U.S.C. § 1125(a)). This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, and 1338.

5. Defendant has made, used, sold, offered for sale, or caused to be sold infringing faucets throughout the United States, including in this judicial jurisdiction.

6. This Court has personal jurisdiction over Defendant, because the infringing faucets have been offered for sale and sold in this judicial district.

7. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant regularly transacts business in the State of Wisconsin and in this judicial district by, among other things, the offering for sale and sale of faucets through the DT Website, and shipment of at least one faucet into this judicial district. At a minimum, Defendant places its products, including the infringing product identified in this Complaint, into the stream of commerce

knowing that such products will be sold in this district.

8. Venue in this judicial district also is proper pursuant to 28 U.S.C. §1391(b)(2) and 28 U.S.C. §1400(b), because Defendant's offer to sell and sale of the infringing faucets occurred in this district.

9. This Court also has personal jurisdiction over Defendant because Defendant is engaged in substantial and not isolated activities within this state.

## General Allegations

10. On or about January 2012, Draught Technologies entered into a non-exclusive patent license ("January 2012 License"), a copy of which is attached as Exhibit 1, with Ameramid, Inc. ("Ameramid").

11. The January 2012 License granted Draught Technologies the non-exclusive worldwide right and license to make, have made, improve upon, use and sell beverage faucets utilizing and/or employing the inventions claimed in U.S. Patent Nos. 6,457,614, 6,626,420, 6,840,281 and 7,077,299. (Ex. 1 at p. 1-2).

12. In consideration of the license, Draught Technologies was to pay Ameramid a lump sum royalty in the amount of $230,000.00, paid as $30,000.00 at the time of signing the agreement and $200,000.00 over a four year quarterly installment plan of $12,500 each, with the installment payments beginning at the earlier of July 1, 2012 of the first shipment of licensed products. (Ex. 1 at p.2).

13. In addition to the lump sum payment, Draught Technologies was to pay Ameramid a continuing periodic royalty based on the gross selling price of licensed product. (Ex. 1 at p.2-3).


14. On February 17, 2012, Draught Technologies made a payment of $20,000.00 to Ameramid. (Exhibit 2, First Declaration of Bradford G. Amidzich, at ¶8).

15. On April 5, 2012, Draught Technologies made a payment of $2,000.00 to Ameramid. (Ex. 2 at ¶9).

16. On April 11, 2012, Draught Technologies made a payment of $2,500.00 to Ameramid. (Ex. 2 at ¶10).

17. Prior to December 9, 2012 Draught Technologies made an additional $3,500.00 in payments to Ameramid. (Ex. 2 at ¶11.)

18. Draught Technologies made no further payments to Ameramid. (Ex. 2, ¶12).

19. The January 2012 License was terminated at least as early as December 9, 2012. (Ex. 2 at ¶13).

20. On September 17, 2014, Ameramid assigned U.S. Patent Nos. 6,457,614, 6,626,420 and 7,077,299 to Plaintiff Vent-Matic. (Ex. 2 at ¶14). A copy of the patent assignment is attached as Exhibit 3.

21. On September 17, 2014, Ameramid, by Bradford Amidzich, assigned Trademark Registration No. 4,474,409 to Plaintiff Vent-Matic. (Ex. 2 at ¶15). A copy of the trademark assignment is attached as Exhibit 4.

22. Plaintiff is the owner of U.S. Patent No. 6,457,614 ("the '614 Patent", a copy of which is attached as Exhibit 5) entitled "Dispensing faucet for a pressurized source."

23. Plaintiff is the owner of U.S. Patent No. 6,626,420 ("the '420 Patent", a copy of which is attached as Exhibit 6) entitled "Dispensing faucet for a pressurized source."

24. Plaintiff is the owner of U.S. Patent No. 7,077,299 ("the '299 Patent", a copy of which is attached as Exhibit 7) entitled "Dispensing faucet for a pressurized source."

25. Plaintiff is the owner of U.S. Trademark Registration No. 4,474,409 (a copy of which is attached as Exhibit 8) of the trademark VENT-MATIC ("VENT-MATIC Mark") for use on liquid dispensing faucets in international class 11.

26. Plaintiff has the sole right to license others to manufacture, import, use, offer to sell and sell products claimed in the '614 Patent, the '420 Patent and the '299 Patent.

27. Plaintiff has the sole right to license others to use the VENT-MATIC Mark on liquid dispensing faucets sold or transported in interstate commerce.

28. Defendant is not licensed by Plaintiff to manufacture, import, use, offer to sell and sell products claimed in the '614 Patent.

29. Defendant is not licensed by Plaintiff to manufacture, import, use, offer to sell and sell products claimed in the '420 Patent.

30. Defendant is not licensed by Plaintiff to manufacture, import, use, offer to sell and sell products claimed in the '299 Patent.

31. Defendant is not licensed to use the VENT-MATIC Mark on liquid dispensing faucets sold or transported in interstate commerce.

32. Defendant sells a product it refers to as "Vent-Matic S/S Faucet with 10mm Spout" ("Accused Faucet"). This product is identified with item code DTF550C on the DT Website. (*See* Exhibit 9).

33. Defendant advertises that the Accused Faucet has a "patented vent-free forward seal design." (Ex. 9).

34. Defendant has sold at least one Accused Faucet in this judicial district. (*See* Exhibit 10).

35. Exhibits 11-18 show a faucet which is an example of an Accused Faucet. Exhibits 11 and 12 show the valve in its closed and open positions respectively. Exhibit 13 shows the valve disassembled. Exhibit 14 shows the valve from the inlet port (C). Exhibits 15 and 16 show the valve in the closed and open position, respectively, from the outlet port (D) side of the valve. Exhibits 17 and 18 show the valve in the closed and open positions, respectively, with the plunger (F) superimposed on the valve body (A) with a line (X) indicating where the valve seat (E) would be.

36. The faucet of Exhibits 11-18 has a valve body (A) having a bore (B) that has axially aligned inlet (C) and outlet ports (D) and having a seat (E) disposed adjacent the outlet port (D).

37. The faucet of Exhibits 11-18 has a plunger (F) disposed in the valve body (A) between the inlet port (C) and the outlet port (D), wherein the plunger (F) has an upstream end (G) and a downstream (H), free end, and wherein the plunger is moveable axially within the bore (*see* Exs. 11-12 and Exs. 17-18), in a direction

6

parallel to fluid flow, from a valve-open position (Exs. 12, 18) to a valve-closed position (Exs. 11, 17).

38. The faucet of Exhibits 11-18 has a valve seal (I) disposed adjacent to the downstream end (H) of the plunger (F), wherein the seal (I) seals against the seat (E) when the plunger (F) is in the valve-closed position (*see* Ex. 15), and wherein at least a majority of the plunger (F) is configured to be immersed in fluid in the bore when the plunger (F) is in the valve closed position.

39. The faucet of Exhibits 11-18 has a valve body (A) having a bore (B), an inlet port (C), an outlet port (D), and a seat (E) disposed adjacent the outlet port (D) (*see* Exs. 14 and 16).

40. The faucet of Exhibits 11-18 has a plunger (F) disposed in the valve body (A) between the inlet port (C) and the outlet port (D), wherein the plunger (F) has a first, upstream end (G) and a second, downstream end (H), wherein the plunger (F) is moveable axially within the bore, in a direction parallel to fluid flow, from a valve-open position to a valve-closed position (*see* Exs. 11-12 and Exs. 17-18), and wherein the plunger has a flow modifying tip (J) on its downstream end (H) that extends at least partially into the outlet port when the plunger (F) is in the valve-open position (*see* Ex. 18).

41. The faucet of Exhibits 11-18 has a valve seal (I) disposed adjacent to the downstream end (H) of the plunger (F), wherein the seal (I) seals against the seat (E) when the plunger (F) is in the valve-closed position (*see* Ex. 15).

42. The faucet of Exhibits 11-18 has a valve body (A) having a bore (B) that has axially aligned inlet (C) and outlet (D) ports and having a seat (E) disposed adjacent the outlet port (D) (*see* Exs. 14 and 16).

43. The faucet of Exhibits 11-18 has a plunger (F) disposed in the valve body (A) between the inlet port (B) and the outlet port (C), wherein the plunger (F) has an upstream end (G) and a downstream (H), free end, and wherein the plunger (F) is moveable axially within the bore, in a direction parallel to fluid flow, from a valve-open position to a valve-closed position (*see* Exs. 11-12 and Exs. 17-18).

44. The faucet of Exhibits 11-18 has a valve seal (I) mounted on the plunger (F), wherein the seal (I) seals against the seat (E) when said plunger is in the valve-closed position (*see* Ex. 15, 17) and is spaced from the seat when the plunger is in the valve-open position (*see* Ex. 18), and wherein at least a majority of the plunger is configured to be immersed in fluid in the bore when the plunger is in the valve closed position.

45. The faucet of Exhibits 11-18 has a flow-modifying tip (J) disposed on the downstream end (H) of the plunger (F) (*see* Ex. 13), the tip (J) extending at least partially into the outlet port when the plunger (F) is in the valve-open position (*see* Ex. 18), and wherein the flow modifying tip (J) has a larger diameter at its upstream end and a smaller diameter at its downstream end.

### Count I-Direct Patent Infringement U.S. Patent No. 6,457,614

46. Plaintiff re-alleges and incorporates by reference paragraphs 1-45 of the Complaint.

47. The acts of Defendant complained of herein constitute patent infringement under 35 U.S.C. § 271(a).

48. More specifically, Defendant's offer for sale and sale of at least the Accused Faucet infringes at least one claim of the '614 Patent.

49. Defendant's offer for sale and sale of the Accused Faucet infringes claim 1 of the '614 Patent.

50. Upon information and belief, Defendant acted, as complained of herein, despite a high likelihood that Defendant's actions infringed, or with reckless disregard of, a valid and enforceable patent, namely, the '614 Patent.

51. Upon information and belief, Defendant actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent, namely, the '614 Patent.

### Count II-Direct Patent Infringement U.S. Patent No. 6,626,420

52. Plaintiff re-alleges and incorporates by reference paragraphs 1-51 of the Complaint.

53. The acts of Defendant complained of herein constitute patent infringement under 35 U.S.C. § 271(a).

54. More specifically, Defendant's offer for sale and sale of at least the Accused Faucet infringes at least one claim of the '420 Patent.

55. Defendant's offer for sale and sale of the Accused Faucet infringes claim 1 of the '420 Patent.

56. Upon information and belief, Defendant acted, as complained of herein, despite a high likelihood that Defendant's actions infringed, or with reckless disregard of, a valid and enforceable patent, namely, the '420 Patent.

57. Upon information and belief, Defendant actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent, namely, the '420 Patent.

### Count II-Direct Patent Infringement U.S. Patent No. 7,077,299

58. Plaintiff re-alleges and incorporates by reference paragraphs 1-57 of the Complaint.

59. The acts of Defendant complained of herein constitute patent infringement under 35 U.S.C. § 271(a).

60. More specifically, Defendant's offer for sale and sale of at least the Accused Faucet infringes of at least one claim of the '299 Patent.

61. Defendant's offer for sale and sale of the Accused Faucet infringes claim 12 of the '299 Patent.

62. Upon information and belief, Defendant acted, as complained of herein, despite a high likelihood that Defendant's actions infringed, or with reckless disregard of, a valid and enforceable patent, namely, the '299 Patent.

63. Upon information and belief, Defendant actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent, namely, the '299 Patent.

## Count III-Trademark Infringement

64. Plaintiff re-alleges and incorporates by reference paragraphs 1-63 of the Complaint.

65. Defendant has used words, terms, names and colorable imitations or counterfeits of or copies of Plaintiff's VENT-MATIC Mark in connection with the sale, offering for sale or advertising of goods.

66. Defendant has used the word VENTMATIC in commerce by placing VENTMATIC on Accused Faucets or their containers or the displays associated therewith (including the DT Website) or on the tags or labels affixed thereto, and the Accused Faucets have been sold or transported in interstate commerce.

67. Defendant's use of the term "VENTMATIC" to describe the Accused Faucet constitutes use of a "counterfeit mark" as that term is defined in 15 U.S.C. §1116 (d)(1)(B).

68. The acts of Defendant complained of herein constitute infringement of the VENT-MATIC Mark.

69. The use, sale of products under, offering products for sale under, and display of the word VENTMATIC in connection with goods including liquid dispensing faucets by Defendant is without permission or authority from Plaintiff and is likely to cause confusion or mistake and to deceive customers into thinking that Defendant's unauthorized and infringing goods and services are Plaintiff's goods and services sold under the VENT-MATIC Mark, or are sponsored, licensed,

or otherwise authorized by, or affiliated, connected or otherwise associated with Plaintiff, its services or its products.

70. Defendant's activities have caused and will continue to cause Plaintiff grave and irreparable harm and damage. Unless permanently restrained and enjoined by this Court, Defendant will persist in its unlawful activities, thereby causing further damage and irreparable harm to Plaintiff and to the public interest.

71. Upon information and belief, all of aforesaid acts were made by Defendant with full knowledge of Plaintiff's proprietary rights in the VENT-MATIC Mark, and such acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

## Count IV-Unfair Competition

72. Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

73. The aforesaid activities of Defendant constitute the use in commerce of a word, term, name, symbol or device or combination thereof, false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or other commercial activities by Plaintiff.

74. The aforesaid activities of Defendant constitute the use in commerce of a word, term, name, symbol or device, or combination thereof, false designation of

origin, false or misleading description of fact, or false or misleading representation of fact that in commercial advertising or promotion, misrepresents the nature, characteristics or qualities of Defendant's goods, services or other commercial activities.

75. The aforesaid activities of Defendant constitute false and misleading descriptions or representations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76. The aforesaid acts of Defendant have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in their favor on each and every claim for relief set forth above and an award for relief including, but not limited to, the following:

A. An order permanently enjoining Defendant and it's officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with it:

i. From manufacturing, importing, using, offering to sell and selling the Accused Faucet or any other product that infringes any of the patents-in-suit;

ii. From directly or indirectly manufacturing, importing, marketing, offering to sell and selling the Accused Faucet, or any confusingly similar devices incorporating a colorable imitation of the VENT-MATIC Mark;

iii. From using the names or mark VENT-MATIC or any confusingly similar mark, name, domain name, or colorable imitation thereof in any way which misleads or confuses anyone as to the source, affiliation, or sponsorship of goods or services offered under such marks; and

iv. From committing any other acts calculated to cause purchasers to believe that Defendant's products are Plaintiff's, and from competing unfairly with Plaintiff in any manner;

B. An Order directing Defendant to file with this Court and serve on Plaintiff's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

C. An Order directing Defendant to surrender for destruction all infringing products and manufacturing supplies in Defendant's possession or control, which are unauthorized copies of Plaintiff's property, or to cause the destruction of products that violate Plaintiff's patent or trademark rights;

D. An Order directing Defendant to surrender for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the word VENTMATIC or any reproduction, counterfeit, copy, derivative or colorable imitation of the VENT-MATIC Mark, and all plates, molds, screens, or other means of making the same;

E. An Order directing Defendant to remove from all websites that it owns or controls, directly or indirectly, the word VENTMATIC or any reproduction,

counterfeit, copy, derivative or colorable imitation of the VENT-MATIC Mark and any variations thereof, and any other marks that are likely to cause confusion with Plaintiff's trademark;

F. A judgment that Defendant has willfully and deliberately committed acts of patent infringement, trademark infringement, and unfair competition;

G. An award of actual monetary damages Plaintiff has incurred as a result of Defendant's infringement, in an amount to be proven at trial;

H. An accounting and disgorgement of Defendant's profits, including prejudgment and post-judgment interest, resulting from its infringing activity, in an amount to be proven at trial;

I. An award to Plaintiff of treble damages for any patent infringement by Defendant that is deemed to be willful, deliberate and intentional pursuant to 35 U.S.C. § 284;

J. An award to Plaintiff of treble damages for any trademark infringement by Defendant that is deemed to be a counterfeit pursuant 15 U.S.C. § 1117;

K. An award of Plaintiff's attorneys' fees, costs, and disbursements incurred in prosecuting this action; and

L. An award to Plaintiff of such other further relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, hereby demands and requests a trial by jury of all claims and issues so triable.

Date: 31 December 2014      Respectfully submitted,

RYAN KROMHOLZ & MANION, S.C.


  s/Melissa S. Hockersmith
Daniel R. Johnson (WI Bar No. 1033981)
Melissa S. Hockersmith (WI Bar No. 1050361)
P .O. Box 26618
Milwaukee, Wisconsin 53226-0618
Telephone: (262) 783-1300
Facsimile: (262) 783-1211
Email: mhockersmith@rkmiplaw.com

Attorneys for Plaintiff Vent-Matic Company, LLC

16